UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIELLE N. SAARI,<br>            Plaintiff,<br>v.<br><br>ALLEGRO MICROSYSTEMS, LLC, and<br>JAMES MOORE,<br>            Defendants. | CIVIL ACTION<br>NO. 4:19-40112-TSH |

## ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS (Docket No. 9)

**February 3, 2020**

**HILLMAN, D.J.**

Danielle N. Saari ("Mrs. Saari") filed this action against Allegro Microsystems, LLC ("Allegro") and James Moore ("Mr. Moore") (collectively, "Defendants"), alleging sexual harassment, retaliation, tortious interference with advantageous business relations, aiding and abetting discrimination, and interference with the right to be free from discrimination. Defendants move to dismiss for failure to state a claim. (Docket No. 9). For the following reasons, the Court ***grants*** in part and ***denies*** in part the motion.

### Background[1]

Allegro employed Mrs. Saari as a Cost Accountant from May 14, 2014, through July 6, 2018. (Docket No. 1 at 2). Initially, her immediate supervisor was Mike Curtis ("Mr. Curtis").

---

[1] The following facts are taken from the Mrs. Saari's complaint (Docket No. 1) and assumed true for the purposes of this motion.

In February 2018,[2] however, Jean Horrigan ("Ms. Horrigan") replaced Mr. Curtis as Cost Accounting Manager and became Mrs. Saari's immediate supervisor. (Docket No. 1 at 2). Mr. Curtis and Ms. Horrigan reported to Mr. Moore.

Although not her direct supervisor, Mr. Moore held frequent one-on-one meetings with Mrs. Saari. (Docket No. 1 at 2). During these meetings, Mr. Moore regularly made sexual comments which made Mrs. Saari uncomfortable. (Docket No. 1 at 2). For example, Mrs. Saari alleges that Mr. Moore would pull at the braids in her hair and say he "really liked this;" comment on her appearance; tell her that he prefers her hair curly and finds curly hair to be attractive; tell her that she was his "type;" and tell her that she was smart and that he thought intelligence was sexy. (Docket No. 1 at 2). Mr. Moore also touched Mrs. Saari inappropriately at various times during her employment with Allegro. (Docket No. 1 at 2). For example, Mrs. Saari alleges that Mr. Moore would rub her clothing, pull her into his chest, and stand behind her desk with his hands on her shoulders. (Docket No. 1 at 2–3). When Mrs. Saari objected to this behavior or made it clear that she did not welcome his comments, Mr. Moore "would make harsh and false criticisms of [her] work, make harsh and insulting comments to her in front of her peers, and give her unintelligible work projects with no direction or guidance, only to criticize Mrs. Saari further when she asked for clarification and/or instructions." (Docket No. 1 at 3–4).

Coworkers gossiped about whether Mr. Moore and Mrs. Saari were having an affair. (Docket No. 1 at 3). After she traveled with Mr. Moore to a New Hampshire facility, coworkers implied that they had not gone on the trip for work purposes. (Docket No. 1 at 3). These coworkers informed Mrs. Saari that Mr. Moore had had an affair with the woman who previously held her

---

[2] The complaint references February 2017, but the briefing from the parties suggests that this is a typographical error and that Ms. Horrigan replaced Mr. Curtis in February 2018. (Docket Nos. 10 at 2, 11 at 4).

position. (Docket No. 1 at 3). Ms. Horrigan also met with Mrs. Saari during this period and "suggested that the number of meetings Mrs. Saari was having with Mr. Moore seemed suspicious, and that Mrs. Saari should be aware how the meetings are being perceived by her coworkers, considering his affair." (Docket No. 1 at 3). After speaking with Ms. Horrigan, Mrs. Saari raised concerns directly with Mr. Moore regarding his behavior. (Docket No. 1 at 3). Mr. Moore called a team meeting during which he openly discussed his affair with the woman who previously held Mrs. Saari's position and stated that Mrs. Saari resembled the woman. (Docket No. 1 at 3). This experience humiliated Mrs. Saari and further damaged her reputation with her coworkers. (Docket No. 1 at 4).

Mrs. Saari scheduled a meeting with human resources ("HR") to discuss an unrelated issue she was having with Ms. Horrigan. (Docket No. 1 at 4, 5). During the meeting, Bill Looney, the Director of HR, asked Mrs. Saari about her relationship with Mr. Moore and suggested that other women had filed sexual harassment claims against him. (Docket No. 1 at 4). Mrs. Saari asked for some time to consider whether to file a formal complaint. (Docket No. 1 at 4). She ultimately decided to proceed, and Allegro began an investigation. (Docket No. 1 at 4). During the investigation, an investigating attorney allegedly told Mrs. Saari that "this was a 'classic' sexual harassment case." (Docket No. 1 at 4). At the end of the investigation, however, Allegro determined that, while there was some evidence of unprofessional bullying, there was no evidence of sexual harassment. (Docket No. 1 at 4). Allegro moved Mr. Moore to corporate position outside the Cost Group to address his bullying. (Docket No. 1 at 4).

HR representatives informed Mrs. Saari of the outcome of the investigation. (Docket No. 1 at 4). Mrs. Saari indicated that she did not feel safe with the results given Mr. Moore's history with female employees and her perception that Allegro was hiding what had happened to her by

3

promoting Mr. Moore. (Docket No. 1 at 4–5). Allegro presented Mrs. Saari with a severance agreement and offered her the chance to resign from her position if she released all claims against the company. (Docket No. 1 at 5). When Mrs. Saari asked if Mr. Moore was also losing his job, the HR representatives allegedly told her that she could be fired and pressured her to sign the release. (Docket No. 1 at 5). Mrs. Saari refused to sign. (Docket No. 1 at 5).

After her meeting with HR, Allegro imposed the new requirement that Mrs. Saari attend weekly performance reviews with Ms. Horrigan and an HR representative. (Docket No. 1 at 5). Two months later, Ms. Horrigan gave Mrs. Saari a "sham" negative performance review that put her future employment in jeopardy. (Docket No. 1 at 5). Mrs. Saari alleges that she was constructively discharged shortly thereafter due to the stress and angst she was experiencing and "the lengths that Allegro was going to in order to punish [her] for her complaints." (Docket No. 1 at 5).

Mrs. Saari filed the instant action on August 28, 2019. (Docket No. 1). She brings seven claims against Allegro: hostile work environment sexual harassment (Counts I and IV); retaliation (Counts II and V); quid pro quo sexual harassment (Count III); aiding and abetting discrimination (Count VI); and interference with the right to be free from discrimination (Count VII). She raises six claims against Mr. Moore: quid pro quo sexual harassment (Count VIII); hostile work environment sexual harassment (Count IX); retaliation (Count X); aiding and abetting discrimination (Count XI); interference with the right to be free from discrimination (Count XII); and tortious interference with advantageous business relations (Count XIII). Defendants moved to dismiss all claims—except Count X, which, despite being referenced in the hearing before this

Court on January 30, 2020, is not addressed in the argument section of Defendants' motion to dismiss—on November 27, 2019.[3] (Docket No. 9 at 4–17).

**Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

**Discussion**

*1. Title VII Sexual Harassment (Count I)*

To establish a hostile work environment claim under Title VII, a plaintiff must show (1) that she "is a member of a protected class;" (2) "that she was subjected to unwelcome sexual harassment;" (3) "that the harassment was based upon sex;" (4) "that the harassment was sufficiently severe or pervasive so as to alter the conditions of [her] employment and create an

---

[3] Because Mrs. Saari does not oppose dismissal of her quid pro quo sexual harassment claims against Defendants (Docket No. 11 at 1), the Court ***grants*** the motion as to Counts III and VIII.

5

abusive work environment;" (5) "that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so;" and (6) "that some basis for employer liability has been established." *Roy v. Correct Care Sols., LLC*, 914 F.3d 52, 61–62 (1st Cir. 2019) (citations and internal quotation marks omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting that a workplace is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (citations and internal quotation marks omitted)).

Defendants suggest that Mrs. Saari has not shown that Mr. Moore's conduct was sufficiently pervasive or severe as to alter the conditions of her employment.[4] The Court disagrees. Mrs. Saari alleges that Mr. Moore made sexual comments, touched her inappropriately, and stared at her body on a "constant[]," "frequent," or "regular" basis.[5] (Docket No. 1 at 2, 3). Mrs. Saari also alleges that Mr. Moore's behavior made her feel uncomfortable, humiliated and infuriated her, negatively impacted her relationship with coworkers, and caused her to receive undeserved criticism and harsh evaluations. (Docket No. 1 at 3, 4). These allegations demonstrate pervasiveness, severity, and effects from which this Court can reasonably infer interference with the conditions of her employment.[6]

Defendants alternatively contend that Mrs. Saari has not established any basis for employer liability. Again, the Court disagrees. An employer is vicariously liable for a hostile work

---

[4] Defendants do not appear to dispute that Mrs. Saari adequately alleges elements (1), (2), (3), or (5), and the Court agrees that she has met her pleading burden with respect to these elements.
[5] Defendants assert that Mr. Moore's conduct consisted of isolated incidents. (Docket No. 10 at 9). But Mrs. Saari pleads constancy, frequency, and regularity (Docket No. 1 at 2, 3), and the Court must accept her allegations as true for the purposes of this motion.
[6] To the extent Defendants want the Court to look behind the pleadings and weigh the merits of Mrs. Saari's allegations of harm, the Court cannot do so at the dismissal stage.

environment "created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Mrs. Saari pleads that Mr. Moore was a supervisor with authority over her. (Docket No. 1 at 2). She thus has met her burden as to element (6).

Defendants assert that they are nonetheless entitled to dismissal because Allegro did not take any tangible employment action against Mrs. Saari. But Defendants misconstrue the doctrine of employer liability. While the Supreme Court has held that a defending employer may raise an affirmative defense against liability when, as here, the employer has not engaged in any tangible employment action, *see Faragher*, 524 U.S. at 807, it has never suggested that the lack of tangible employment action, in and of itself, precludes liability. And because Defendants have not established entitlement to the *Faragher* affirmative defense as a matter of law at this juncture, the Court declines to dismiss on this ground.

In sum, because Mrs. Saari has alleged facts establishing a plausible entitlement to relief for sexual harassment under Title VII, the Court ***denies*** the motion to dismiss Count I.

*2. State Law Sexual Harassment (Counts IV & IX)*

Section 4(16A) of Chapter 151B of the Massachusetts General Laws makes it unlawful "[f]or an employer, personally or through its agents, to sexually harass any employee." Sexual harassment means "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." *Id.* § 1(18); *see also Muzzy v. Cahillane Motors, Inc.*, 434 Mass. 409, 411 (2001). A hostile work environment is one "that is pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization,

[and that] poses a formidable barrier to the full participation of an individual in the workplace." *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001) (citations and internal quotation marks omitted) (alteration in original).

To bring a hostile work environment claim under Chapter 151B, "a plaintiff must establish that she . . . was compelled to work in [a hostile work] environment during her employment." *Id.* at 533. As noted above, Mrs. Saari has alleged facts which, taken as true, establish severe and pervasive harassment sufficient to interfere with her work performance. The Court thus ***denies*** the motion to dismiss Counts IV or IX.

*3. Title VII Retaliation (Count II)*

To bring a retaliation claim under Title VII, "a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." *Noviello v. City of Bos.*, 398 F.3d 76, 88 (1st Cir. 2005). Adverse employment actions include all "employer actions that would have been materially adverse to a reasonable employee, defined as actions that are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Ahern v. Shinseki*, 629 F.3d 49, 55 (1st Cir. 2010) (citations and internal quotations marks omitted).

Mrs. Saari has not established that Allegro undertook any adverse employment action that can reasonably be tied to her act of filing a sexual harassment complaint. Her complaint suggests that she was constructively discharged and/or forced to return to a hostile environment post-filing. (Docket No. 1 at 6). Mrs. Saari, however, only alleges three possible acts of harassment occurring after she filed her complaint—(1) that she was presented with a severance agreement when she complained of being unhappy with the result of the investigation, (2) that she was forced to attend

weekly performance reviews with Ms. Horrigan and an HR representative,[7] and (3) that, two months after the reviews began, Ms. Horrigan gave her a "sham" negative performance review that put her future employment in jeopardy (Docket No. 1 at 5)—none of which plausibly rise to the level of constructive discharge.[8] And as she does not allege that any of the conditions created by Mr. Moore continued after his transfer to a corporate position, she has not demonstrated that Allegro forced her to return to the hostile work environment created by those conditions.

In her opposition to dismissal, Mrs. Saari suggests that the underlying acts alleged—specifically, presenting her with a severance agreement and giving her a negative performance review—were themselves adverse employer actions.[9] The Court rejects this argument. Mrs. Saari has not shown that either act was materially adverse. As to the first, although Mrs. Saari alleges that she was pressured to sign the severance agreement during her meeting with HR representatives, she has not pled any harm or injury from which the Court might reasonably infer material adversity. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). She indisputably did *not* resign during this meeting, and she does not allege that HR pressured her to resign at any point afterwards. *Cf. Ahern*, 629 F.3d at 56 (1st Cir. 2010) ("Merely proposing a change in an employee's schedule does not, in and of itself,

---

[7] The harassment appears to be the mere fact that Mrs. Saari was required to attend these meetings. Mrs. Saari has not alleged that any specific act of misconduct occurred during them.

[8] "To state a claim for constructive discharge, as opposed to discriminatory termination, plaintiff must allege that [Allegro] imposed 'working conditions so intolerable that a reasonable person would feel compelled to forsake [her] job rather than to submit to looming indignities.'" *Fisher v. Town of Orange*, 885 F. Supp. 2d 468, 477 (D. Mass. 2012) (quoting *Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000)) (second alteration in original).

[9] She also suggests that the failure to fire Mr. Moore was an adverse employment action, but she does not explain how the decision to transfer Mr. Moore rather than fire him was an adverse action taken *against her* where he was nonetheless removed from her chain of command.

constitute a materially adverse action. To qualify, the proposal must be brought to fruition; and here the four-day work schedule remained intact." (citations omitted)). As to the second, although Mrs. Saari states in a conclusory manner that the negative performance review put her future employment in jeopardy, she fails to support that assertion with any factual allegations. She does not plead, for example, that the negative performance review put her on track for imminent termination or that it otherwise had any tangible consequence on her employment. *See Bhatti v. Trustees of Bos. Univ.*, 659 F.3d 64, 73 (1st Cir. 2011); *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 200 (D. Mass. 2009). Absent any indication that presenting her with severance agreement or giving her a negative performance review would have any tendency to dissuade a reasonable employee from making or supporting a charge of discrimination, Mrs. Saari fails to establish plausible entitlement to relief for retaliation under Title VII. The Court therefore ***grants*** the motion to dismiss Count II.[10]

### 4. *State Law Retaliation (Count V)*

To bring a retaliation claim under Chapter 151B "a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." *Noviello*, 398 F.3d at 88. "[A]n adverse employment action, for purposes of Chapter 151B has been broadly defined to include any material 'disadvantage[ ] in respect to salary, grade, or other objective terms and conditions of employment.'" *Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 157 (1st Cir. 2009) (quoting *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 663 (1996)) (second alteration in original).

Mrs. Saari concedes that "the definition of 'adverse employment action' is more broadly construed under Title VII than under 151B." (Docket No. 11 at 14). Thus, for the reasons

---

[10] This dismissal is without prejudice and with leave to amend.

discussed above, Mrs. Saari fails to state a claim for retaliation under stricter standard governing Chapter 151B. The Court accordingly ***grants*** Defendants' motion to dismiss Count V.[11]

*5. Aiding and Abetting Discrimination (Counts VI & XI)*

To bring an aiding and abetting claim under Chapter 151B, "a plaintiff must show (1) that the defendant committed a wholly individual and distinct wrong . . . separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B." *Lopez v. Com.*, 463 Mass. 696, 713 (2012) (citations and internal quotation marks omitted) (alternation in original); *see also* M.G.L. c. 151B, § 4(5).

Here, Mrs. Saari has not alleged any acts of discrimination by Allegro separate and distinct from those of Mr. Moore or any acts of discrimination by Mr. Moore separate and distinct from those of Allegro. Because the discrimination charges against both parties are premised on the same conduct, the Court ***grants*** the motion to dismiss Counts VI and XI. *See Soni v. Wespiser*, 239 F. Supp. 3d 373, 388 (D. Mass. 2017); *see also Ping Zhao v. Bay Path Coll.*, 982 F. Supp. 2d 104, 115 (D. Mass. 2013) (noting that "the complaint contains distinct factual allegations supporting the discrimination claims against both BPC and Semprebon, thereby facilitating the independent aiding and abetting claim against Semprebon").

*6. Interference with the Right to be Free from Discrimination (Counts VII & XII)*

Section 4(4A) of Chapter 151B makes it unlawful to "coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." M.G.L. c. 151B, § 4(4A); *see also Fisher*, 885 F. Supp 2d at 476. To establish a claim

---

[11] This dismissal is without prejudice and with leave to amend.

for unlawful interference under this provision, a plaintiff "must show that [the defendant] interfered with her rights under the statute 'in deliberate disregard of those rights.'" *Semmami v. UG2 LLC*, No. 18-12396, 2019 WL 2249705, at *7 (D. Mass. May 24, 2019) (quoting *Furtado v. Standard Parking Corp.*, 820 F. Supp. 2d 261, 278 (D. Mass. 2011)).

Here, Mrs. Saari has alleged facts plausibly establishing that Defendants deliberately disregarded her right to be free from discrimination. She pleads that she generally "made it clear that [Mr. Moore's] sexual comments were not welcomed." (Docket No. 1 at 3). She also pleads that she directly raised concerns with Mr. Moore regarding how other coworkers perceived his behavior after their trip to New Hampshire. (Docket No. 1 at 3–4). Despite having notice that his conduct made Mrs. Saari uncomfortable, however, Mr. Moore continued to harass Mrs. Saari. (Docket No. 1 at 3, 4). The Court therefore ***denies*** the motion to dismiss Counts VII and XII.

*7. Tortious Interference with Advantageous Business Relations (Count XIII)*

"To establish intentional interference with contractual or business relations, the plaintiff[] must show (1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 397 (1996).

Mrs. Saari has stated a claim for tortious interference against Mr. Moore. She alleges that she had a business relationship with Allegro and that Mr. Moore improperly interfered with this relationship by sexually harassing her. Defendants contend that this claim, even if properly pled, is barred by the exclusivity provision of Chapter 151B. (Docket No. 10 at 16 –17). Chapter 151B, however, does not preclude or preempt traditional state law claims if those claims "do not entirely

overlap [with the] discrimination claims." *McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp. 2d 280, 290 (D. Mass. 2013). Here, the tortious interference claim is premised, at least in part, on the effect that Mr. Moore's discrimination had on her professional development at Allegro, e.g., her relationships with coworkers and her ability to complete work assignments. *See Zhao*, 982 F. Supp. 2d at 118. Because her tortious interference claim "is not simply a recast version of her sex discrimination claims," it would be premature to dismiss Count XIII at this juncture. *Id.* The Court therefore ***denies*** this portion of Defendants' motion.

## Conclusion

For the reasons stated above, Defendants' motion is ***granted*** in part and ***denied*** in part. (Docket No. 9). Counts II, III, V, VI, VIII, and XI are dismissed without prejudice and, with respect to Counts II and V, with leave to amend. Counts I, IV, VII, IX, X, XII, and XIII survive this motion.

**SO ORDERED**

>  ***/s/ Timothy S. Hillman***
> **TIMOTHY S. HILLMAN**
> **DISTRICT JUDGE**